

**SEALED**

*MCH* HMG/GW: USAO#2021R00577

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **UNITED STATES OF AMERICA** | : **CRIMINAL NO.** RDB-22-397 |
| | : |
| **v.** | : **(Conspiracy To Commit Wire Fraud,** |
| | : **18 U.S.C. § 1349; Wire Fraud, 18 U.S.C.** |
| **ADEYANJU ADEWALE,** | : **§ 1343; Aiding and Abetting, 18 U.S.C.** |
| | : **§ 2; Forfeiture, 18 U.S.C. §§ 981, 982)** |
| **a/k/a "WALE,"** | : |
| | : **UNDER SEAL** |
| **Defendant.** | : |
| | : |

...oOo...

### INDICTMENT

### COUNT ONE – CONSPIRACY TO COMMIT WIRE FRAUD

The Grand Jury for the District of Maryland charges:

### INTRODUCTION

At times material to this Indictment:

1.    Defendant **ADEYANJU ADEWALE, a/k/a "WALE" ("ADEWALE")**, was a resident of Baltimore County, Maryland.

2.    FELA AINA, a/k/a "SAMSON ADEYEMI" ("AINA"), and DAVID AMAO, a/k/a "JOHN WILLIAMS," a/k/a "WALE PEDRO" ("AMAO"), were residents of Baltimore County, Maryland.

3.    AKANDA UKOHA, a/k/a "GEORGE AKINTOYE" ("UKOHA"), was a resident of Baltimore County and Anne Arundel County, Maryland.

4.    ADEWALE ADESANYA, a/k/a "TIMI GRAIG" ("ADESANYA"), was a resident of Texas and Georgia.

1

5.     The Virginia529 College Savings Plan was a savings plan administered by the
Commonwealth of Virginia that enabled individuals to invest money, tax-free, to be used for
future qualified higher education expenses.

6.     The Ohio Medicaid program ("Ohio Medicaid") and the Colorado Medicaid
program ("Colorado Medicaid") provided benefits to millions of Americans, including children,
pregnant women, elderly adults, eligible low-income adults, and people with disabilities.  Ohio
Medicaid and Colorado Medicaid were administered by the Centers for Medicare & Medicaid
Services ("CMS") and agencies in the respective states.

7.     The United States, as well as the States of Ohio and Colorado, made Medicaid
payments to health care providers, including Ohio Hospital #1 and Colorado Hospital #1.

8.     Ohio Hospital #1 was located near Toledo, Ohio and provided a wide array of
health care services to its patients.

9.     Colorado Hospital #1 was located in Denver, Colorado and provided a wide array
of health care services to its patients.

10.     Bank of America, N.A. ("BOA"), Capital One, N.A. ("CO"), Farmers and
Merchant Bank ("FMB"), J.P. Morgan Chase Bank, N.A. ("JPM"), PNC Bank, N.A. ("PNC"),
SunTrust Bank, Inc. ("SunTrust"), Truist Bank ("Truist"), Pentagon Federal Credit Union
("Pentagon Federal"), and Wells Fargo Bank, N.A. ("WF") (collectively the "Financial
Institutions") were financial institutions as defined in 18 U.S.C. § 20.

11.     The Financial Institutions maintained records concerning financial transactions in
their accounts, including but not limited to records about the individuals controlling the accounts,

2

and in some instances, surveillance video and/or images, and information about the identification documents used to open an account.

## THE CONSPIRACY AND ITS OBJECT

12.     Beginning at least in or about 2018, and continuing through at least in or about February 2022, in the District of Maryland, and elsewhere,

### ADEYANJU ADEWALE,
### a/k/a "WALE,"

the defendant herein, did knowingly and willfully combine, conspire, confederate, agree, and have a tacit understanding with AMAO, AINA, UKOHA, ADESANYA, and other persons known and unknown to the Grand Jury, to knowingly, and with intent to defraud, devise and intend to devise, a scheme and artifice to defraud the United States, multiple states, hospitals, individuals, law firms, the Financial Institutions, an educational savings plan, and others, to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, knowing the pretenses, representations, and promises were false and fraudulent when made, and to knowingly transmit and cause to be transmitted by means of wire communication in interstate and foreign commerce, certain writings, signs, signals, pictures, and sounds, in violation of 18 U.S.C. § 1343.

## PURPOSE OF THE CONSPIRACY

13.     It was a purpose of the conspiracy for **ADEWALE** and his co-conspirators to: (a) deceive and cause the victims to be deceived so victim money would be directed to financial accounts controlled by the co-conspirators; (b) engage in financial transactions that would make it difficult for the victims and law enforcement to identify the co-conspirators and seek the return

3

of fraudulently obtained money; and (c) unlawfully enrich themselves by using money from the fraud for the personal use and benefit of **ADEWALE** and his co-conspirators.

## METHODS AND MEANS

14.    It was part of the conspiracy and scheme to defraud that **ADEWALE** assisted his co-conspirators in obtaining false, forged, and counterfeited passports and other identification documents, including South African passports, a South African driver's license, and a United States Visa for AMAO, a Virginia driver's license for AINA, and a Maryland driver's license for UKOHA.

15.    It was further part of the conspiracy and scheme to defraud that **ADEWALE's** co-conspirators, including AMAO, AINA, and UKOHA, created and caused the creation of shell companies in Maryland.

16.    It was further part of the conspiracy and scheme to defraud that **ADEWALE's** co-conspirators, including AMAO, AINA, and UKOHA, used the false, forged, and counterfeited passports and other identification documents they had obtained with the assistance of **ADEWALE** to fraudulently open bank accounts.

17.    It was further part of the conspiracy and scheme to defraud that **ADEWALE** and his co-conspirators, including AMAO, AINA, UKOHA, and ADESANYA, used fraudulently opened bank accounts to receive and deposit money obtained from multiple victims.

18.    It was further part of the conspiracy and scheme to defraud that **ADEWALE** arranged for money to be routed through intermediate bank accounts to accounts controlled by co-conspirators.

4

19.     It was further part of the conspiracy and scheme to defraud that **ADEWALE** and his co-conspirators used phones, the internet, email, WhatsApp, and other facilities of interstate and foreign wire communication in furtherance of the conspiracy.

20.     It was further part of the conspiracy and scheme to defraud that **ADEWALE** and his co-conspirators caused more than $4 million in financial loss.

Acts Involving AMAO

21.     It was part of the conspiracy and scheme to defraud that **ADEWALE** assisted AMAO in obtaining the following false, forged, and counterfeited identification documents: (i) a South African passport, South African driver's license, and United States visa in the name "JOHN WILLIAMS," and (ii) a South African passport in the name "WALE PEDRO." All of these identification documents contained AMAO's facial image, but not his real name.

22.     It was further part of the conspiracy and scheme to defraud that, in order to further the scheme, and conceal and disguise its detection, AMAO used aliases to cause the creation of Maryland shell companies, including John Williams Tech LLC.

23.     It was further part of the conspiracy and scheme to defraud that AMAO used the "JOHN WILLIAMS" passport to fraudulently open bank accounts in Maryland in the name of John Williams Tech LLC.

24.     It was further part of the conspiracy and scheme to defraud that AMAO set up purported business offices for shell companies using fake identities, including the "WALE PEDRO" alias.

25.     It was further part of the conspiracy and scheme to defraud that **ADEWALE** caused and sought to cause fraudulently obtained money from victim law firms to be credited to

5

bank accounts controlled by AMAO. The victim law firms were deceived as to where to send money for legitimate business payments and, in one instance, as the result of an email account intrusion.

26.     It was further part of the conspiracy and scheme to defraud that the personal identifying information of a real person with the initials S.M. was used to obtain access to the funds in a Virginia529 College Savings Plan.

27.     It was further part of the conspiracy and scheme to defraud that in or about April 2019, **ADEWALE** fraudulently caused and attempted to cause approximately $52,000 from the Virginia529 College Savings Plan to be transferred to a PNC Bank account ending in 6261 ("PNC 6261"), which AMAO controlled.

28.     It was further part of the conspiracy and scheme to defraud that **ADEWALE's** co-conspirators, via interstate wire communications, pretended to be associated with Ohio Hospital #1 and Colorado Hospital #1, and falsely and fraudulently submitted electronic funds transfer ("EFT") changes, on behalf of the victim hospitals, to Ohio Medicaid and Colorado Medicaid.

29.     It was further part of the conspiracy and scheme to defraud that the false and fraudulent information that **ADEWALE's** co-conspirators sent to Ohio Medicaid and Colorado Medicaid caused the Medicaid payors to change the bank accounts on file for Ohio Hospital #1 and Colorado Hospital #1 to (i) an account at JPM ending in 2506 ("JPM 2506"), and (ii) an account at CO ending in 2565 ("CO 2565"), respectively, both of which were controlled by AMAO.

30.     It was further part of the conspiracy and scheme to defraud that **ADEWALE** and his co-conspirators fraudulently caused Ohio Medicaid and the State of Ohio, by and through the

6

Ohio Office of Budget and Management, to transfer to JPM 2506 more than $3 million intended
for the benefit of Ohio Hospital #1 to AMAO and his co-conspirators, resulting in an interstate
wire communication.

31.     It was further part of the conspiracy and scheme to defraud that **ADEWALE** and
his co-conspirators fraudulently caused Colorado Medicaid, by and through the Colorado
Department of Health Care Policy and Financing, to transfer to CO 2565 more than $600,000
intended for the benefit of Colorado Hospital #1, resulting in an interstate wire communication.

32.     It was further part of the conspiracy and scheme to defraud that **ADEWALE**
caused and sought to cause additional deposits into AMAO's accounts that resulted in interstate
wire communications occurring in Maryland.

Acts Involving AINA

33.     It was further part of the conspiracy and scheme to defraud that **ADEWALE**
directed AINA to establish a Maryland limited liability company, Pinnacle Height Construction
LLC ("Pinnacle"), which was a shell company that did not have physical premises, engage in
business activities, earn legitimate income, or pay wages to employees, in the State of Maryland.

34.     It was further part of the conspiracy and scheme to defraud that **ADEWALE**
obtained, used, and transferred a false, forged, and counterfeited identification document,
namely, a Virginia driver's license, to AINA that bore the name "SAMSON ADEYEMI" so
AINA could open financial accounts.

35.     It was further part of the conspiracy and scheme to defraud that **ADEWALE**
worked with AINA to open bank accounts at SunTrust ("SunTrust 1118") and Farmers and
Merchant Bank ("FMB 1642") in the name of Pinnacle, using the false, forged, and counterfeited

7

Virginia driver's license, with the only authorized signatory on the account being "SAMSON ADEYEMI."

36.     It was further part of the conspiracy and scheme to defraud that **ADEWALE** and AINA used SunTrust 1118 and FMB 1642 to receive and deposit money obtained from multiple victims, including Pentagon Federal, Charles Schwab, P.H., F.B., and J.G., after they had been deceived into sending money based on false and fraudulent pretenses.

37.     It was further part of the conspiracy and scheme to defraud that **ADEWALE** caused funds from the wire fraud scheme to be routed through intermediate bank accounts controlled by co-conspirators before being deposited into SunTrust 1118 and FMB 1642, which were controlled by AINA.

38.     It was further part of the conspiracy and scheme to defraud that after the money was credited to SunTrust 1118, **ADEWALE** and AINA caused cash withdrawals, the purchase of cashier's checks used to purchase automobiles, debit card transactions, and other financial transactions.

39.     It was further part of the conspiracy and scheme to defraud that **ADEWALE** personally benefited from the conspiracy and scheme to defraud when money from SunTrust 1118 was used to purchase money orders, and those money orders were given to **ADEWALE**.

40.     It was further part of the conspiracy and scheme to defraud that in or about March 2021, **ADEWALE** caused a cashier's check for $32,000 to be deposited into ST 1118.  The $32,000 cashier's check represented money from an unauthorized accessing of Victim J.G.'s bank account at Pentagon Federal.

8

41.     It was further part of the conspiracy and scheme to defraud that in or about March 2021, **ADEWALE** caused AINA to deposit a $52,000 cashier's check into FMB 1642. The cashier's check had been paid for with money from Victim J.G.'s bank account at Pentagon Federal. The funds in FMB 1642 were later restricted before **ADEWALE** and AINA could access the majority of the funds.

42.     It was further part of the conspiracy and scheme to defraud that **ADEWALE** and AINA used a portion of the fraudulently obtained funds for their personal benefit.

Acts Involving UKOHA

43.     It was further part of the conspiracy and scheme to defraud that in or about 2018, **ADEWALE** obtained and transferred to UKOHA a fake, fictitious, and fraudulent Maryland driver's license in the name "GEORGE AKINTOYE" so UKOHA could open bank accounts using the AKINTOYE alias.

44.     It was further part of the conspiracy and scheme to defraud that in or about September 2018, UKOHA created Danik Consulting LLC ("Danik"), a Maryland entity, and listed "GEORGE AKINTOYE" as its registered agent. Danik did not have physical premises, gross revenues, and employee wages.

45.     It was further part of the conspiracy and scheme to defraud that in or about January 2019, **ADEWALE** caused UKOHA to use the "GEORGE AKINTOYE" driver's license to open Danik bank accounts, including a Bank of America account ending in 1869 ("BOA 1869"), a Wells Fargo account ending 1059 ("WF 1059"), and a SunTrust Bank account ending in 8522 ("ST 8522").

9

46.     It was further part of the conspiracy and scheme to defraud that, in or about 2019,
**ADEWALE** caused fraud proceeds to be deposited into accounts registered to Danik, and then
money orders were purchased using such funds and the money orders were deposited into bank
accounts controlled by **ADEWALE**.

47.     It was further part of the conspiracy and scheme to defraud that in or about
January 2019, **ADEWALE** caused BOA 1869 to receive a Chase cashier's check for
$120,000, which was paid for with funds fraudulently obtained from a law firm.

48.     It was further part of the conspiracy and scheme to defraud that in or about
January 2019, **ADEWALE** caused UKOHA to use funds from BOA 1869 to purchase two
cashier's checks totaling more than $50,000, and to wire more than $50,000 to an account in
Nigeria, resulting in an interstate and foreign wire communication beginning in Maryland.

49.     It was further part of the conspiracy and scheme to defraud that in or about
January 2019, an individual in Maryland ("Maryland Resident #1") received more than $400,000
from a victim business located in Virginia that had been deceived as to where to send money for
a legal settlement.

50.     It was further part of the conspiracy and scheme to defraud that in or about
January 2019, Maryland Resident #1 used the funds from the law firm to purchase $71,000 and
$62,000 cashier's checks and caused the cashier's checks to be delivered to the same address in
Maryland.

51.     It was further part of the conspiracy and scheme to defraud that in or about
January 2019, **ADEWALE** caused AMAO to receive the $71,000 cashier's check, which was
purchased with funds from the bank account of Maryland Resident #1.

10

52.     It was further part of the conspiracy and scheme to defraud that in or about January 2019, the $71,000 cashier's check was deposited into a PNC bank account ending 5206 ("PNC 5206"), which AMAO controlled.

53.     It was further part of the conspiracy and scheme to defraud that in or about January 2019, **ADEWALE** provided UKOHA with the $62,000 Wells Fargo cashier's check, which was purchased with funds from the bank account of Maryland Resident #1.

54.     It was further part of the conspiracy and scheme to defraud that in or about January 2019, UKOHA deposited the $62,000 Wells Fargo cashier's check into ST 8522.

55.     It was further part of the conspiracy and scheme to defraud that **ADEWALE** caused UKOHA to engage in multiple financial transactions using the funds in ST 8522.

56.     It was further part of the conspiracy and scheme to defraud that in or about March 2019, **ADEWALE** arranged for UKOHA to receive two fraudulently obtained USAA cashier's checks. After the cashier's checks were deposited into BOA 1869 and WF 1059, UKOHA engaged in multiple financial transactions.

57.     It was further part of the conspiracy and scheme to defraud that **ADEWALE** and UKOHA obtained a portion of the fraud funds for their personal benefit.

58.     It was further part of the conspiracy and scheme to defraud that in or about March 2019, UKOHA sought to use the fraudulent "GEORGE AKINTOYE" driver's license to engage in a fraudulent transaction at a TD Bank branch in Baltimore, Maryland, where UKOHA was arrested.

11

Frauds Involving ADESANYA

59.     It was further part of the conspiracy and scheme to defraud that ADESANYA obtained and used a false, forged, and counterfeited identification document, namely, a false, forged, and counterfeited Nigerian passport that contained the facial image of ADESANYA, but bore the name "TIMI GRAIG."

60.     It was further part of the conspiracy and scheme to defraud that in or about 2019 and 2020, ADESANYA used the "TIMI GRAIG" Nigerian passport open bank accounts in the names of GRAIG and Blue Springs Corp. ("Blue Springs") at multiple financial institutions, including a Blue Springs account at Bank of America ending in 1246 ("BOA 1246").

61.     It was further part of the conspiracy and scheme to defraud that in or about 2019, ADESANYA provided **ADEWALE** with bank account information relating to BOA 1246.

62.     It was further part of the conspiracy and scheme to defraud that in or about March and April 2020, **ADEWALE** caused and attempted to cause the deposit of fraudulently-obtained checks in the amount of $32,000 and $135,000 that were deposited into BOA 1246, which was controlled by ADESANYA.

63.     It was further part of the conspiracy and scheme to defraud that in or about April 2020, at **ADEWALE's** direction, ADESANYA caused a portion of the $135,000 deposit to be sent overseas, resulting in interstate and foreign wire communications.

64.     It was further part of the conspiracy and scheme to defraud that in or about 2020, **ADEWALE** had encrypted WhatsApp communications with ADESANYA, resulting in interstate wire communications.

12

65.     It was further part of the conspiracy and scheme to defraud that in or about 2020,

**ADEWALE** approached ADESANYA about using a bank account that ADESANYA controlled

to receive at least $1 million in health care-related funds.

66.     It was further part of the conspiracy and scheme to defraud that in or about 2020,

**ADEWALE** approached ADESANYA a second time about receiving a portion of the health care

related funds, and acknowledged to ADESANYA that **ADEWALE** had already directed the

health care related funds to AMAO.

18 U.S.C. § 1349

## COUNTS TWO THROUGH FIFTEEN – WIRE FRAUD

The Grand Jury for the District of Maryland further charges that:

1.     Paragraphs 1 – 11 and 13 – 66 of Count One of this Indictment are incorporated here by reference.

2.     Beginning in or about August 2018, and continuing until in or about February 2022, in the District of Maryland and elsewhere,

### ADEYANJU ADEWALE,
### a/k/a "WALE,"

the defendant herein, did knowingly and willfully, and with intent to defraud, devise and intend to devise a scheme and artifice to defraud the United States, multiple states, hospitals, individuals, law firms, the Financial Institutions, an educational savings plan, and others, and to obtain money by means of materially false and fraudulent pretenses, representations, and promises, and for the purpose of executing and attempting to execute such scheme and artifice to defraud, did knowingly transmit and cause to be transmitted by means of wire communications, in interstate and foreign commerce, writings, signs, signals, pictures, and sounds, in violation of 18 U.S.C. § 1343.

### THE CHARGES

3.     On or about the dates set forth below, in the District of Maryland and elsewhere, the defendant, for the purpose of executing and attempting to execute the scheme and artifice to defraud described above, did knowingly transmit and cause to be transmitted in interstate commerce by means of a wire communication, certain signals, signs and sounds, as set forth below:

14

| COUNT | DATE | DESCRIPTION | INTERSTATE WIRE COMMUNICATION DETAILS |
|---|---|---|---|
| 2 | 1/12/19 | Opening of BOA 1869 | Maryland to Virginia |
| 3 | 1/14/19 | Opening of ST 8522 | From Maryland to a location outside Maryland |
| 4 | 1/22/19 | Deposit of a $120,000 cashier's check into BOA 1869 | Texas to Maryland |
| 5 | 1/29/19 | $32,210 transaction in BOA 1869 | From Maryland to a location outside Maryland |
| 6 | 1/30/19 | Wire of $58,000 to IMPROJECT, Limited in Nigeria | From Maryland to a location outside Maryland |
| 7 | 1/30/19 | Deposit of a $71,000 cashier's check to PNC 5206 | From Maryland to a location outside Maryland |
| 8 | 2/19/19 | Deposit of a $62,000 cashier's check into ST 8522 | From Maryland to a location outside Maryland |
| 9 | 3/10/19 | $8,500 withdrawal from BOA 1869 | From Maryland to a location outside Maryland |
| 10 | 3/11/19 | $10,000 wire from BOA 1869 | From Maryland to a location outside Maryland |
| 11 | March 2019 | Purchase of a $19,800 cashier's check using funds from ST 8522 | From Maryland to a location outside Maryland |
| 12 | 1/10/20 | Opening of ST 1118 | From Maryland to a location outside Maryland |
| 13 | 3/23/20 | Deposit of an $80,000 cashier's check into ST 1118 | From Maryland to a location outside Maryland |
| 14 | 3/25/20 | ATM withdrawal for $500 from ST 1118 | From Maryland to a location outside Maryland |

| 15 | 8/18/20 | Deposit of $368,000 into CO 2565 | From Maryland to a location outside Maryland |

18 U.S.C. § 1343
18 U.S.C. § 2

## FORFEITURE ALLEGATION

The Grand Jury for the District of Maryland further alleges that:

1.    Pursuant to Fed. R. Crim. P. 32.2, notice is hereby given to the defendant that the

United States will seek forfeiture as part of any sentence in accordance with 18 U.S.C. §§ 981,

982, 21 U.S.C. § 853(p), and 28 U.S.C. § 2461(c) in the event of the defendant's conviction on

any of the offenses charged in Counts One through Fifteen of this Indictment.

2.    Upon conviction of any of the offenses set forth in this Indictment, the defendant,

### ADEYANJU ADEWALE,
### a/k/a "WALE,"

shall forfeit to the United States, pursuant to 18 U.S.C. § 982(a)(2)(A), any property constituting,

or derived from, proceeds obtained directly or indirectly, as the result of such offense(s).

3.    The property to be forfeited includes, but is not limited to, a money judgment in the

amount of the funds the defendant obtained as a result of the scheme to defraud.

### Substitute Assets

4.    If, as a result of any act or omission of the defendant, any such property subject to

forfeiture,

- (a)    cannot be located upon the exercise of diligence;

- (b)    has been transferred, or sold to, or deposited with a third person;

- (c)    has been placed beyond the jurisdiction of the Court;

- (d)    has been substantially diminished in value; or

- (e)    has been commingled with other property which cannot be subdivided without difficulty;

17

the United States, pursuant to 21 U.S.C. § 853(p) as incorporated by 18 U.S.C. § 982(b) and 28

U.S.C. § 2461(c), shall be entitled to forfeiture of substitute property up to the value of the

forfeitable property.

18 U.S.C. § 981
18 U.S.C. § 982
21 U.S.C. § 853(p)
28 U.S.C. § 2461(c)

EREK L. BARRON
United States Attorney

GLENN S. LEON
Chief
Criminal Division, Fraud Section

A TRUE BILL:

**SIGNATURE REDACTED**

Foreperson

Date: 11/16/2022

18